**LaMONICA HERBST & MANISCALCO, LLP**  Relates to Hearing Scheduled for:
*Counsel to Lori Lapin Jones, Chapter 7 Trustee*  February 6, 2019 at 2:30 p.m.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Gary F. Herbst, Esq.
Melanie A. FitzGerald, Esq.
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                                              Chapter 7

1516 BEDFORD AVENUE HOUSING                                         Case No. 18-45044 (NHL)
DEVELOPMENT FUND CORPORATION,

                    Debtor.
------------------------------------------------------------------x

**CHAPTER 7 TRUSTEE'S OBJECTION TO MOTION OF THE CITY OF NEW YORK FOR (I) STAY RELIEF, OR, IN THE ALTERNATIVE, (II) DISMISSAL OF THE CASE, TO PERMIT IT TO COMPLETE FORECLOSURE AND TRANSFER OF THE REAL PROPERTY LOCATED AT 1516 BEDFORD AVENUE, BROOKLYN, NEW YORK**

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE

Lori Lapin Jones, as Chapter 7 Trustee ("Trustee") of the estate of 1516 Bedford Avenue Housing Development Fund Corporation ("Debtor" or "HDFC"), by her undersigned counsel, submits this objection ("Objection") to the Motion of the City of New York ("City") for: (I) Stay Relief to Permit Foreclosure and Transfer of the Debtor's Real Property or, in the Alternative, (II) Dismissal of the Case ("Motion") [Doc. Nos. 11 and 12], and respectfully represents and sets forth as follows:

**PRELIMINARY STATEMENT**

By the Motion, the City seeks relief from the automatic stay with respect to the Debtor's real property located at 1516 Bedford Avenue, Brooklyn, New York 11216 ("Real Property"), which Real Property is the single and most valuable asset of the Debtor's estate. The City alleges that it is owed approximately $3.42 million dollars on account of pre-petition outstanding and

unpaid real property taxes and charges, and pre-petition outstanding and unpaid water and sewer charges. The fair market value of the Real Property, however, is believed to be no less than $4.3 million dollars. As set forth more fully below, the City has failed to satisfy the heavy burden placed on creditors seeking relief from the automatic stay or, alternatively, dismissal of a Chapter 7 case.

Prior to the Petition Date, the City was awarded an *in rem* foreclosure judgment against the Real Property but no deed transferring the Real Property out of the Debtor's name had been executed or recorded. By the Motion, the City seeks to complete its *in rem* foreclosure sale of the Real Property, either by obtaining relief from the automatic stay or by dismissal of the Debtor's case. As reflected in the Motion, the ultimate third-party transferee will be a developer. If granted, such relief would have severe consequences for other creditors of the Debtor's estate, as well as the Debtor's shareholders who have lived at the Real Property for more than thirty (30) years. Indeed, the City's transfer of the Real Property would deprive other creditors of the Debtor's estate from any possibility of payment and would deprive the Debtor's shareholders of their equity in the Debtor and their home.

Equally important, granting the City's Motion will not lead to a final resolution and will instead likely result in protracted litigation. Pursuant to section 11-412(c) of the New York City Administrative Code ("Administrative Code"), deeds given pursuant to final *in rem* judgments are presumptive evidence that the *in rem* action and all proceeding therein and all proceedings prior thereto were proper. However, section 11-412(c) of the Administrative Code expressly provides that the presumption is only conclusive <u>two years from the date of the recording of such deed</u>. Here, significant concerns about the propriety of service of process in the *in rem* action have been raised by the Debtor's shareholders. Indeed, it appears that service of process in the *in rem* action may not have been properly effectuated upon the Debtor or its shareholders in accordance with

2

section 11-406 of the Administrative Code. Since no deed has been recorded yet, the two-year period to challenge the *in rem* action under section 11-412(c) of the Administrative Code has not yet begun to run.

It is also worth noting that neither the Debtor nor its shareholders were represented by counsel in connection with the 7A proceeding that resulted in the appointment of a public administrator over the Real Property. It appears there were irregularities in service in that proceeding as well. Further, the entry of the *in rem* judgment may be avoidable as a constructive fraudulent conveyance.

By separate motion, the Trustee seeks authorization to conduct a public auction sale of the Chapter 7 estate's right, title and interest in and to the Real Property, free and clear of any and all interests including, but not limited to, monetary liens, claims and encumbrances ("Sale Motion") [Doc. No. 14]. The Trustee has the support of the Debtor's shareholders to sell, which will maximize the value of the Real Property for all creditors, including the City, and the Debtor's shareholders.

For these and the reasons set forth more fully below, the City's Motion should be denied in its entirety.

**BACKGROUND**

1. On September 4, 2018 ("Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code.

2. Lori Lapin Jones was appointed as the Chapter 7 Trustee of the Debtor's estate.

3. The Debtor is a Housing Fund Development Corporation created under Article XI of the Private Housing Finance Law of the State of New York ("PHFL").

4.	As of the Petition Date, the Debtor held title to the Real Property, which consists of 16 residential units. The Trustee is informed that 7 units are vacant, 4 units are occupied by shareholders ("Shareholders") of the Debtor and 5 units are occupied by tenants.

**A.	Title to the Real Property**

5.	The Debtor acquired title to the Real Property by deed dated May 8, 1989 and recorded May 24, 1989 in Reel 2392 page 101 ("Deed"), a copy of which is annexed as **Exhibit A**. Mildred H. Williams ("Williams") executed the Deed in her capacity as President of the HDFC. See id.

6.	In the Deed, there is a covenant that the HDFC (i.e., the Debtor) "covenants and agrees not to sell, transfer, exchange, encumber, mortgage, place a lien upon, or subject to any security instrument whatsoever or otherwise dispose of all or substantially all of the Premises for twenty-five (25) years from the date of this Deed . . . ." See **Exhibit A**. The restriction contained in the Deed terminated by its own terms in 2014.

7.	Public real estate records reflect that the Real Property is encumbered by a Security Agreement dated May 8, 1988 (sic) and notarized May 8, 1989 between the HDFC and the City. Williams executed the Security Agreement in her capacity as President of the HDFC.

**B.	The 7A Proceeding**

8.	Prior to the Petition Date, the Commissioner of the Department of Housing Preservation and Development ("HPD") and the City moved for an order appointing an administrator for the Real Property pursuant to Article 7-A of the Real Property Actions and Proceedings Law ("7A Proceeding"). Neither the Debtor nor any of its shareholders were represented by counsel in the 7A Proceeding. The Trustee is informed by counsel to the Debtor that Williams was never served with the required process in the 7A Proceeding.

9. Pursuant to a Consent Order and Judgment entered on February 2, 2012 by the Civil Court of the City of New York, County of Kings, Housing Part B ("Consent Order and Judgment"), Nancooar Rajcooar was appointed as the administrator for the Real Property ("Administrator"). Williams executed the Consent Order and Judgment on behalf of the Debtor.

10. The City has informed the Trustee that the Administrator is operating the Real Property in compliance with applicable law, including by collecting rents, addressing necessary repairs and maintaining insurance.

C. **The *In Rem* Foreclosure Proceeding**

11. According to the Motion, the Real Property was included in *In Rem Tax Foreclosure Action No. 53, Borough of Brooklyn* (Sup. Ct. Kings Co. Index No. 8700/2015) ("*In Rem* Action") under the *in rem* tax lien foreclosure laws of section 11-412.1 of the Administrative Code. See Motion at p. 6, ¶ 15.

12. Neither the Debtor nor any of its shareholders were represented by counsel in the *In Rem* Action.

13. On December 14, 2017, a Judgment of Foreclosure was entered. See Exhibit E to Motion.

14. The Trustee is informed by the Debtor that Williams was not properly served with notice of the *In Rem* Action. Sometime in 2014, after the appointment of the Administrator, Williams sought approval from the HPD to relocate from Apartment 4-C at the Real Property to Apartment 1-C at the Real Property. Thereafter, sometime in 2014, Williams moved to Apartment 1-C. The Foreclosure Notice dated July 24, 2015 and related documents relating to the commencement of the In Rem Action were addressed to Williams at "Apt 4C," not 1-C – her residence since 2014. **See Exhibit B** at p. 5.

15. As of the Petition Date, no deed transferring the Real Property out of the Debtor's name had been recorded.

**D.  The Sale of the Real Property**

16. Debtor's counsel informed the Trustee that, as of the Petition Date, the Debtor was in contract for the sale of the Real Property ("Contract"). The Contract provided for a purchase price of $4.3 million. The Contract has not been consummated.

17. The Trustee has determined that there is equity in the Real Property that can be realized through a sale. The shareholders of the Debtor who assert equity in the Real Property support a sale by the Trustee. By separate motion, the Trustee seeks authority to conduct a public auction sale of the Real Property in order to maximize its value for the estate. See, generally, Doc. No. 14.

**THE TRUSTEE'S OBJECTIONS**

18. The Motion should be denied because there exists an equity cushion in the Real Property that provides the City with more than adequate protection for what it is owed, and because it would yield an inequitable result. Moreover, granting the relief requested in the Motion will not result in a complete resolution of the issues.

**A.  The Automatic Stay Should Not Be Modified To Permit The City to Transfer the Real Property**

19. Section 362 of the Bankruptcy Code provides, in pertinent part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay … for cause, including the lack of adequate protection of an interest in property or such party in interest …." 11 U.S.C. § 362(d)(1).

20. It is well settled that "[t]he automatic stay provision is considered one of the fundamental debtor protections provided by the bankruptcy laws." Church Mut. Ins. Co. v. Am. Home Assur. Co. (In re Heating Oil Partners, LP), 422 F. App'x 15, 17 (2d Cir. 2011) (quotation and citation omitted). Consequently, the burden with respect to lifting the automatic stay is a heavy one. See In re Sabine Oil & Gas Corp., 548 B.R. 674 (Bankr. S.D.N.Y. 2016). As explained in In re Taub, 413 B.R. 55, 61 (Bankr. E.D.N.Y. 2009):

> The Second Circuit has observed that '[n]either the statute nor the legislative history defines the term 'for cause." Sonnax, 907 F.2d at 1285. The court identified several factors to be considered in deciding whether cause exists to lift the automatic stay to allow litigation to proceed in another forum, as follows:(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

21. As several courts have noted, "[w]hen applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." In re Keene Corp., 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994); see also In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

22. The City has not carried the heavy burden of demonstrating cause to vacate the automatic stay against the Real Property and the Motion should be denied. According to the Motion, the City is owed approximately $3.42 million. The Real Property, however, has a fair

market value believed to be at least $4.3 million. With such excess value in the Real Property, the City is more than adequately protected.

23. The Real Property may be used for other purposes if the HDFC is dissolved and the Real Property transferred to a non-HDFC entity. See, e.g., State of New York Department of Law Real Estate Finance Bureau Memorandum dated July 16, 2015 re: *Guidance on Housing Development Fund Corporations Seeking to Transfer or Sell Property for, or Otherwise Convert Property to Market-Rate Use,* https://www.ag.ny.gov/sites/default/files/pdfs/bureaus/real_estate_finance/Effective-memos/7.16.2015_Guidance_on_HDFC_Seeking_to_Transfer_or_Sell_Property.pdf (last visited January 30, 2019). Here, the Debtor is being liquidated in Chapter 7 and therefore the HDFC will not be operating going forward.

24. The City argues that the four-month mandatory redemption period expired prior to the Petition Date is "akin to the fall of the hammer at a foreclosure sale." See Motion at p. 9, ¶ 27. This, however, ignores the plain language of section 11-412(c) of the Administrative Code. As explained by the Court of Appeals of New York:

> For a period of <u>two years from the date the tax deed is recorded</u>, an owner or mortgagee may apply for release of the property (Administrative Code § 11-424 [a]). If this application is made within four months of the filing date -- and includes all requisite taxes, charges and penalties -- the City must grant the release. If an application is made after this four-month period, but prior to the expiration of the two-year limitation, release of the property is within the discretion of the Board of Estimate.
>
> Finally, title 11 contains what is in effect a Statute of Limitations, providing that, <u>after a period of two years from filing</u>, a tax foreclosure deed raises a conclusive presumption that the in rem foreclosure proceeding was conducted in accordance with all provisions of law relating thereto (Administrative Code § 11-412 [c]). No action to set aside the tax deed may be commenced after the expiration of this two-year period.

ISCA Enters. v. City of N.Y., 77 N.Y.2d 688, 694, 569 N.Y.S.2d 927, 929, 572 N.E.2d 610, 612 (1991).

25. Here, it is undisputed that a tax deed for the Real Property has not been recorded. Thus, the two-year period to challenge the *In Rem* Action has not yet begun to run. The Trustee is informed that there may be significant issues with service of process in the City's *In Rem* Action which would form a basis to set aside any deed transferring the Real Property out of the Debtor's name. Thus, consideration of the first <u>Sonnax</u> factor, i.e., whether relief would result in a partial or complete resolution of the issues, weighs heavily in favor of denying the Motion.

26. Consideration of several other <u>Sonnax</u> factors likewise support denial of the Motion.

    a. As to the second <u>Sonnax</u> factor (lack of any connection with or interference with the bankruptcy case), the Real Property is the single most valuable asset of the Debtor's estate and allowing the City to foreclose on it clearly has a connection to the bankruptcy case. It will also interfere in the bankruptcy case as the Trustee – as the sole representative of the Debtor – is the only party who may challenge the propriety of the *In Rem* Action under section 11-412(c) of the Administrative Code on behalf of the Debtor;

    b. As to the third <u>Sonnax</u> factor (whether a specialized tribunal with the necessary expertise has been established to hear the cause of action), denial of the Motion and approval of the Sale Motion will result in the City being paid, in full, on account of its claims against the Real Property, which supports denial of the Motion;

    c. As to the sixth <u>Sonnax</u> factor (whether the action primarily involves third parties), the action would involve the same parties, which supports denial of the Motion;

      d.      As to the seventh <u>Sonnax</u> factor (whether litigation in another forum would prejudice the interests of other creditors), other creditors of the Debtor would be prejudiced if the Motion is granted because there would be no assets in the Debtor's estate from which they could be paid, which supports denial of the Motion;

      e.      As to the tenth <u>Sonnax</u> factor (the interests of judicial economy and the expeditious and economical resolution of litigation), denial of the Motion and approval of the Sale Motion will result in the City being paid, in full, on account of its claims against the Real Property; and

      f.      As to the eleventh <u>Sonnax</u> factor, <u>i.e.</u>, whether the parties are ready for trial in the other proceeding, they are not because the recording of the foreclosure deed will trigger a new two-year statute of limitations to object to the *In Rem* Action.

27.     The twelfth <u>Sonnax</u> factor, <u>i.e.</u>, the impact of the stay on the parties and the balance of harms, weighs in favor of denial of the Motion. Importantly, the Real Property will not be transferred to another housing development fund corporation if the City is allowed to complete its *In Rem* Action. The Motion expressly provides that "[t]he ultimate third-party transferee will be a developer selected by HPD." <u>See</u> Motion at p. 7, ¶ 23. Furthermore, while the City argues that the Real Property will remain affordable housing, there is no statute or other requirement that it must remain affordable housing. In fact, it appears from the reports of the Administrator that certain units at the Real Property are currently being rented at market value.

28.     There is equity in the Real Property that can be realized through a sale to satisfy the City, in full, pay creditors of the Debtor and likely make distributions to the Debtor's Shareholders on account of their equity in the Debtor. The Motion should be denied.

**B.    The Court Should Delay a Ruling on Dismissal or, Alternatively, Deny Dismissal**

29.    The Court should delay a ruling on that portion of the Motion that seeks dismissal until the Court rules on the request to lift the automatic stay. If the automatic stay is not lifted, the case should not be dismissed.

30.    The City has not met its heavy burden to establish that cause exists to dismiss the Debtor's case. See In re Aiello, 428 B.R. 296, 299 (Bankr. E.D.N.Y. 2010) (confirming party moving for dismissal "bears the burden of proving cause by a preponderance of the evidence" (citation omitted)). In this context, "the determination of whether cause exists is committed to the sound discretion of the bankruptcy court." Smith v. Geltzer (In re Smith), 507 F.3d 64, 73 (2d Cir. 2007) (quotation and citation omitted). The Trustee submits that a unique fact pattern exists in the instant case and requests this Court to exercise its discretion and allow the Trustee to move forward and administer this case for the benefit of the estate and its creditors.

31.    Pursuant to section 548(a)(1)(B) of the Bankruptcy Code, "[t]he trustee may avoid any transfer … of an interest of the debtor in property …that was made … on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily … (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer…." See 11 U.S.C. § 548(a)(1)(B). The following four elements must be established in order to prevail on a claim for constructive fraudulent conveyance pursuant to section 548(a)(1)(B):

> (1) the debtor had an interest in Property; (2) a transfer of that interest occurred within two years of the filing of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received less than reasonably equivalent value in exchange for the transfer.

11

Canandaigua Land Dev., L.L.C. v. County of Ont. (In re Canandaigua Land Dev., L.L.C.), 521 B.R. 457, 466 (Bankr. W.D.N.Y. 2014), vacated on other grounds, 2017 WL 2821874 (W.D.N.Y. June 29, 2017).

32. While the issue is not procedurally before this Court for final adjudication, the Trustee believes all the elements of a constructive fraudulent conveyance are present. Certainly, the City's purported claim in excess of $3.42 million falls short of the contract price of $4.3 million that the Debtor entered into for the sale of the Real Property immediately prior to the Petition Date. The difference is the equity that the Trustee would be able to preserve for the benefit of the estate and the Shareholders.

33. Courts within the Second Circuit have consistently held that, in similar situations, tax sales are subject to the requirements of section 548(a)(1)(B) of the Bankruptcy Code and, where appropriate, may be avoided as constructive fraudulent conveyances. See, e.g., Clinton Cty. Treasurer v. Wolinsky, 511 B.R. 34 (N.D.N.Y. 2014); County of Clinton v. Warehouse at Van Buren St., Inc., 496 B.R. 278 (N.D.N.Y. 2013); Balaber-Strauss v. Murphy (In re Murphy), 331 B.R. 107 (Bankr. S.D.N.Y. 2005); Canandaigua Land Dev., L.L.C., 521 B.R. 457; Herkimer Forest Prods. Corp. v. County of Clinton (In re Herkimer Forest Prods. Corp.), 04-13978, Adv. Pro. No. 04-90148, 2005 Bankr. LEXIS 3260 (Bankr. N.D.N.Y. July 26, 2005).

34. In each of the cited cases, the courts found that tax sales were subject to the requirements of section 548(a)(1)(B) and can be avoided as constructively fraudulent conveyances where the tax debt being satisfied is substantially less than the value of the real property—where there was not reasonable equivalent value—and where, after the tax sale, the liabilities of the debtor outweigh the assets of the debtor—where the debtor is insolvent or made insolvent by the transfer. See Clinton Cty. Treasurer, 511 B.R. at 34; County of Clinton, 496 B.R. at 283; Balaber-

Strauss, 331 B.R. at 126; Canandaigua Land Dev., L.L.C., 521 B.R. at 477; Herkimer Forest Prods. Corp., 2005 Bankr. LEXIS 3260, at *11-13.

35. In Clinton Cty. Treasurer, 511 B.R. 34, 36, the county commenced an *in rem* tax foreclosure on real property valued at $42,000 on account of a tax debt of approximately $2,500. After the debtor failed to respond to the foreclosure or redeem the property by paying the delinquent taxes, the county sold that property at auction for $25,500. Id. at 36. The bankruptcy court held that the tax sale was avoidable as a constructive fraudulent conveyance pursuant to section 548(a)(1)(B) of the Bankruptcy Code. Id. On appeal, the United States District Court for the Northern District of New York affirmed the decision, holding that "[t]he plain language of Bankruptcy Code § 548 permits the Trustee to avoid 'any transfer'—including a valid state tax foreclosure proceeding—that occurred within two years prior to the filing of the bankruptcy petition and involved actual or constructive fraud." Id. at 41.

36. Similarly, in Murphy, in order to collect approximately $30,000 in unpaid taxes, the taxing authority filed an *in rem* tax foreclosure on the debtor's real property, worth in excess of $1,000,000, and was granted default judgment after the debtor failed to answer and failed to redeem within the redemption period. Balaber-Strauss, 331 B.R. at 113-14. The Murphy Court, in denying the taxing authorities motion to dismiss, held that the facts alleged established a cause of action pursuant to section 548(a)(1)(B) of the Bankruptcy Code and stated:

> The Bankruptcy Code affords taxing authorities no exception, and a taxing authority is bound by the Bankruptcy Code to the same extent as any other creditor. See United States v. Whiting Pools, Inc., 462 U.S. 198, 209, 76 L. Ed. 2d 515, 103 S. Ct. 2309 (1983). As the Supreme Court held, "Congress carefully considered the effect of the new Bankruptcy Code on tax collection . . . and decided to provide protection to tax collectors, such as the IRS, through grants of enhanced priorities for unsecured tax claims . . . and by the nondischarge of tax liabilities." Id. Although the result here impinges on a state regulatory scheme, it does so only to the extent that the scheme conflicts with the clear dictates of the Bankruptcy Code. The state's interest in enforcing its unpaid tax obligations is recognized by the Bankruptcy Code and, in fact, given higher priority than other creditors' interests.

> There is no dispute that defendant has the right to enforce its lien and to collect on debtor's tax obligation, and it would be able to do so in the context of debtor's bankruptcy case. Defendant is not denied its very important interest in securing payment of outstanding tax obligations by reason of avoidance of the transfer to the extent necessary to protect other creditors.

Id., 331 B.R. at 120-21. Further, in Canandaigua, the taxing authority had been awarded default judgment in an in rem tax foreclosure that it had commenced to collect approximately $17,000 in delinquent taxes after the debtor failed to answer or redeem, and the taxing authority sold the property, which had a fair market value of between $300,000 and $425,000, for approximately $167,000. Canandaigua Land Dev., L.L.C., 521 B.R. at 461-62. In that case, the bankruptcy court held that a taxing authority is not entitled to a presumption that a tax foreclosure was for reasonably equivalent value, that extinguishing approximately $17,000 in debt in exchange for property worth between $300,000 and $425,000 was not a transfer for reasonably equivalent value, that the debtor was rendered insolvent by the transfer and, therefore, the transfer was an avoidable constructive fraudulent conveyance pursuant to section 548(a)(1)(B) of Bankruptcy Code. Id., 521 B.R. at 477.

37.     For all these reasons, the Trustee believes she is entitled to an opportunity to market the Real Property for sale. If the City were granted the relief requested in the Motion and allowed to continue the *In Rem* Action, a valuable asset will be lost, elderly Shareholders will be displaced and equity that would otherwise be available to the estate will be lost.

**WHEREFORE**, the Trustee respectfully requests that this Court deny the relief requested by the City in its Motion.

Dated: January 30, 2019
      Wantagh, New York    **LaMONICA HERBST & MANISCALCO, LLP**
                                            Counsel to Lori Lapin Jones, as Chapter 7 Trustee

                              By:    *s/ Gary F. Herbst*
                                        Gary F. Herbst, Esq.
                                        Melanie A. FitzGerald, Esq.
                                        Holly R. Holecek, Esq.
                                        3305 Jerusalem Avenue, Suite 201
                                        Wantagh, New York 11793
                                        Telephone: (516) 826-6500