UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                                    **Case No: 18-45044-nhl**

1516 BEDFORD AVENUE HOUSING

DEVELOPMENT FUND CORPORATION,

      Debtor.

-----------------------------------------------------------------X

**MEMORANDUM OF LAW REGARDING PROPERTY IN DEBTOR'S ESTATE**

Respectfully submitted,

*[signature]*

Angelyh Johnson & Assoc. LLC

Attorney for Debtor

26 Court Street, suite 2810

Brooklyn, New York 11242

718-875-2145

## BACKGROUND OF FACTS

The Debtor is a cooperative housing development fund corporation pursuant to the Private Housing Finance Law of the State of New York. The Subject Premises is comprised of sixteen residential apartments out of which seven (7) apartments are vacant, five (5) apartments are occupied by nonregulatory tenants and four (4) apartments are shareholder owned and occupied.

The Subject Premises is a HDFC formed pursuant to the laws of the City of New York whereby the Subject Premises was used for affordable housing for low income individuals. In the late 80s, the Subject Premises was sold to the shareholders for $4000 pursuant to a Regulatory Agreement for twenty-five (25) years which has expired. The Subject Premises was in deplorable condition and the City expected low income people to fix the Subject Premises AND pay the taxes and water charges that accrued.

When the City graciously sold this small group of low-income people the Subject Premises (Debtor herein) as shareholder/owners, the shareholders had no money nor any guidance to rehabilitate the Subject Premises. The combination of no money, no experience and major capital repairs to be performed quickly proved to be a disaster and an obvious impossibility to perform.

Initially, the Debtor was paying the taxes, but starting in 2005, the tenants in the rental units stopped paying the rent and thereafter the Debtor was compelled to retain attorneys to commence nonpayment proceedings against the tenants for the rent. Notably, these are low income housing units comprised of low-income tenants under a program developed by the City. At the same time, the Debtor was obligated to pay

the taxes, water, commence and prosecute legal proceedings and maintain the Subject Premises.

When the tenants were brought to court during the time frame of 2005-2007, the tenants would fail to pay the as per the Court stipulation, vacate resulting in the Debtor not realizing the rental arrears and therefore, could not perform the repairs to the apartment units that the tenants damaged and vacated. Additionally, the rental tenants are comprised of people who are judgment proof since they are also low income, therefore, there was no reason to execute the money judgments against the defaulting tenants. The Debtor could not afford to retain collection attorneys to collect on the judgments against former tenants who had little to no income.

The Debtor re-rented some of the units because there were insufficient funds to rehabilitate all of the units. During this time, Ms. Williams was in contact with HPD who rendered no financial nor advisory assistance.

With little to no money, Debtor commenced nonpayment proceedings against three (3) rent defaulting tenants. In her capacity as President of the Debtor, Ms. Williams filled out the paperwork, hired the process server, paid the index number fees and appeared in court without the benefit of counsel. The Judge(s) informed her that the Debtor could not maintain the action unless it had an attorney since the landlord was an HDFC. The problem is that the Debtor is low income, the Subject Premises in need of repair, three (3) of the four (4) rental tenants were not paying rent, therefore, the Debtor could not afford to retain an attorney. Of course, the City consistently offered No assistance.

Instead of HPD assisting the Debtor, in February 2012, the City improperly coerced Ms. Williams to sign a consent order for a 7A Administrator. The 7A took complete financial and managerial control, although the Debtor is the OWNER and it thought that this would be a temporary situation whereby the City would give the 7A a loan to quickly perform the repairs. The entire idea of a 7A Administrator was WRONG resulting in more financial debts caused by the City and how having to be paid for by the Debtor.

The City lied and deceived the Debtor from the inception of their relationship. The City complains about the tax arrears, but at no time did the City advise the Debtor that if it sold one rental apartment, then the proceeds of the sale would have paid all the tax and water arrears years ago. As noted by the prior filed affidavit of Mildred Williams, neither she nor the shareholders understood what a flip tax was.

In an effort to completely destroy the Debtor, the 7A expends in excess of $800,000 and rehabilitates only 9 of the apartments (4 shareholder/5 rental), leaving seven (7) apartments vacant and in need of rehabilitation. The large lien in the taxes assessed by the Department of Finance encompasses the 7A work.

Incredulously, although the rental apartments are NOT subject to rent regulation since the apartments are owned by the Debtor (Cooperative Corporation), the 7A leases the newly renovated rental apartments in the following amounts: $640.00 (apt. 3D); $340.00 (apt. 3A); $540.00 (apt. 2D); $740.00 (apt. 2C) and $410.00 (apt. 2B).

The 7A has been in control since February 2012. Since this time, under the control of the City of New York, the Debtor has fallen further behind and of course the added tax debt for the $800,000.00 bill for partial rehabilitation. THE CITY HAS BEEN IN CONTROL

OF THE SUBJECT PREMISES FOR SEVEN YEARS…COLLECTING ALL INCOME AND NOW WANTS TO STEAL THE DEBTOR'S EQUITY AND PROPERTY!!!!

### City of New York does not have jurisdiction over the Debtor

It should be noted that the City spends no time advising the court that it properly obtained jurisdiction over the Debtor and fails to annexed a copy of the notice of foreclosure which would certainly render it's application baseless since service upon the President of the HDFC was never properly effectuated.

As noted by the Notice of Foreclosure, said notice was sent to Mildred Williams in her former apartment 4C where she has not resided for four (4) years and obtained permission from HPD in 2014 to relocate to an apartment on the first floor (apt. 1C).

As a result of the sewer service performed by the City, the judgment of foreclosure is null, and void and the City should not be permitted to foreclosure as a matter of law. The City's prior notice of Ms. Williams apartment designation and failure to serve at the proper address offends traditionally notions of fair play and substantial justice mandating that the Judgment be vacated.

The in rem notice procedures are set forth in Admin. Code § 11-401 et seq. must be satisfied and requires that the notice must be "reasonably calculated" under all circumstances to apprise the interested parties of the pendency of the action. Matter of ISCA Enterprises v. City of New York, 77 N.Y.2d 688 (1991).

The City has failed to comply with the notice provisions and requirements set forth in the Administrative Code and when one claims a lack of notification where the City has noticed of the proper address, then the foreclosure judgment should be vacated. Hatorah v. City of New York, 175 A.D. 2d 795 (2nd Dept. 1991). Not only did Ms. Williams

deny receipt of the notice, she has demonstrated that the City of New York gave her permission to move to the first-floor apartment and that the City has had notice of her new residence in apartment 1C since 2014.

The Appellate Division: Second Department case entitled In re List of Delinquent Taxes, Brooklyn, 286 A.D. 1027, the court dealt with the judgment of foreclosure regarding the tax lien where the City of New York had prior notice of a different address of the owner and stated in pertinent part:

> "The statutory provision for the notice is designed to protect property owners and is strict construction. City of White Plains v. Hadermnann, 272 App. Div. 506, 72 N.Y.S.2d 155, affirmed 297 N.Y. 623, 75 N.E.2d 634; City of New Rochelle v. Stevens, 271 App. Div. 977, 68 N.Y.S. 31, affirmed 297 N.Y. 533, 74 N.E. 2d 469. Compliance therewith is a prerequisite to jurisdiction. Since there was, this case, a failure to comply with the statute, respondent's time to redeem, as provided by the notice of foreclosure has not started to run."

The Supreme Court: Kings County in Matter of the foreclosure of tax Liens, 133 N.Y.S 2d 659, the Court dealt with the unreasonableness of the City of New York who conceded that the mailing was sent to the wrong address but failed to consent to vacate the judgement of foreclosure and stated:

> "It is conceded by the Corporation Counsel that no notice was sent to the above named at that address......It is contended by the Corporation Counsel that these books containing said work sheets are not 'records" of the City Treasurer, even though prepared under his direction by his staff and thereafter kept in his office and that therefore there was no violation of the statutory requirement relating to notice. The court concludes, however, that upon making these memoranda and maintaining them in his office they became records of the City Treasurer, that therein appeared the name of the petitioner (though spelled incorrectly) and an address and that by failing to send here the notice of the proceeding the judgment is void is so far as it relates to her. The fact that her husband resides with her and the notice was addressed to him at his place of business

is effectual for jurisdictional purposes in that it fails to comply with the express mandate of the statute."

As a matter of law, the judgment of foreclosure must be vacated based upon improper service of process resulting in not jurisdiction over the Debtor vacating the judgment of foreclosure issued on default.

### Debtor possess the Subject Premises as a part of the Bankruptcy Estate

In the case before this Court, it has been demonstrated that the notices were not properly served although the City had notice and knowledge of the address of the Debtor and failed to serve her at the proper address. Additionally, the City sent the foreclosure notices to the 7A administrator who has failed to file an affidavit that he informed the shareholders of the pending foreclosure proceeding. This silence speaks volumes and demonstrates the bad of the City and it's "hired gun", 7A Administrator.

Prior to the City's attempt to transfer the ownership to a third party based upon an improper judgment of foreclosure, the Debtor filed the instant bankruptcy petition. To date, the ownership of the Subject Premises remains with the Debtor.

Under 11 U.S.C. §541 (a)(1), the bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." For the Bankruptcy Court to grant to the Trustee's motion to Order the sale of the Subject Premises pursuant to 11 U.S.C. § 363, the Subject Premises must be a part of the bankruptcy estate under Section 541.

The City has cited NYC Admin Code § 11-412.1(h) that the time to expire for redemption period is Aril 16, 2018 which is four (4) months after the notice of entry of the improper judgment of foreclosure and sale. The City has maintained that §11-412.1(h) is

"presumptive evidence that a deed given pursuant this section......and all notices required by law were regular and in accordance with all laws relating thereto." The statute further states that after four (4) months this presumption becomes conclusive. The City has previously cited O'Bryan v. Stark, 909 NYS 2d 427 has their authority regarding the conclusiveness of 11-412.1(h).

Upon review of O'Bryan, supra., the Appellate Division decided that the judgment of foreclosure and right to redemption was conclusive since the property owner submitted a mere denial of receipt of the notice. In the case at bar, there is more than a mere denial of receipt as per the affidavit of Mildred Williams and the evidence that was submitted demonstrating that the City knew that she has moved from apartment 4C to apartment 1C coupled with the shear arrogance of the City's agent, 7A Administrator, who received the notices and did absolutely NOTHING demonstrated in inapplicability of 11-412.1(h). The presumption is conclusive ONLY when the statutory requirements have been met and there is STRICT compliance with all statutory conditions. In the state court proceeding, clearly the presumption is rebuttable after redemption period expires upon a proper showing as in the case at bar. Otherwise, there would be a taking of property without due process of law which is exactly what the City wants to occur against elderly low-income proprietary lessees. In fact, the state court proceeding was commenced and prosecuted under the incorrect statute for distressed properties and the Subject Premises is certainly not distressed. I urge this Court to review the 69 page decision of Judge Mark Partnow who did a detailed analysis of the statute which was meant for distressed, practically abandoned properties.

Under New York law, the right of redemption is extinguished by the foreclosure sale itself, regardless of whether the deed was delivered to the auction purchaser. Bank of New York v. Ortiz, 817 N.Y.S. 2d 154 (A.D. 2nd Dept. 2006) held that the foreclosure auction before the filing of a bankruptcy petition prevented property from entering the bankruptcy estate. In GMAC Mortgage Corp. v. Tuck, 750 N.Y.S. 2d 93 (A.D. 2d Dept. 2002), the court stated that the "redemption is not permitted after a foreclosure sale, whether or not a deed has actually been delivered to the sale purchaser."

## CONCLUSION

It is clear that the right of redemption has not expired and under New York law, until there is an auction sale, the owner has a clear right to redeem. The behavior of the City demonstrates their complete bad faith in seeking to continue to strip the shareholders of their right to sell the Subject Premises which is their right since the twenty-five (25) year restriction expired. The Debtor has a buyer who is ready, willing and able to close at a purchase price of $4.3 million dollars. The City receives their $3 million dollars and the Debtor receives a very small "slice of heaven" which they deserve after the City turned their backs on the low-income Debtor, but is willing to extinguish the debt, give financial assistance, and monies for rehabilitation to a third party investor. The City is clearly the "wolf in sheep's clothing". Hopefully the City's bad behavior and nonsensical theory will be stopped by this court as it was by Judge Partnow.