**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Lori Lapin Jones, Chapter 7 Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Gary F. Herbst, Esq.
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                                      Chapter 7

1516 BEDFORD AVENUE HOUSING                Case No.: 18-45044 (NHL)
DEVELOPMENT FUND CORPORATION,

              Debtor.
------------------------------------------------------------------x

### MOTION FOR AN ORDER APPROVING STIPULATION, APPROVING THE SALE OF THE DEBTOR'S REAL PROPERTY TO 1516 BEDFORD AVENUE LLC, AUTHORIZING THE TRUSTEE TO MAKE CERTAIN PAYMENTS FOLLOWING THE CLOSING ON THE SALE, AND GRANTING RELATED RELIEF

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE

Lori Lapin Jones, as Chapter 7 Trustee ("Trustee") of the estate of 1516 Bedford Avenue

Housing Development Fund ("Debtor"), files this motion ("Motion"), pursuant to 11 U.S.C.

§§105(a), 363(b)(1), 363(f), 363(m) and 363(n) ("Bankruptcy Code"), and Rules 2002(a)(2),

2002(a)(3), 6004(a), 6004(h) and 9019(a) of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules"), seeking entry of an Order: (i) approving a stipulation permitting the sale

of the Debtor's real property subject to affordability restrictions, and settling various disputes

and claims ("Stipulation"); (ii) approving the Trustee's sale of the Debtor's real property to 1516

Bedford Avenue LLC ("Purchaser"), as nominee of Gavriel Sakoff for $790,000 ("Purchase

Price") in accordance with the Stipulation; (iii) authorizing the Trustee to make certain payments

following the closing on the sale in accordance with the Stipulation; and (iv) granting related

relief. In support of the Motion, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

As the record in this case reflects, the Trustee, the Debtor, the Debtor's shareholders, the Purchaser and the City of New York ("City") engaged in protracted, good faith negotiations concerning the sale of the Debtor's real property. The Stipulation for which approval is sought provides for, inter alia, the consensual sale of the Debtor's real property to the Purchaser for $790,000, payments by the Purchaser to the Debtor's shareholders totaling $410,000, the Trustee's payment of $400,000 from the sale proceeds to the City of New York in full and final satisfaction of certain liens against the property, and the Trustee's payment of other fees and expenses relating to the Debtor's case and the Debtor's real property. If approved, the Stipulation resolves the Trustee's pending motion for authority to sell the Debtor's real property and the City's and the Debtor's objection to that motion, as well as the City's pending motion for relief from the automatic stay and the Trustee's and the Debtor's objections to that motion. In the exercise of her sound business judgment, the Trustee determined that the sale of the Debtor's real property in accordance with the Stipulation is the most provident way to resolve all disputes and conclude this case, and is in the best interests of the Debtor's estate and its creditors.

For these and the reasons set forth below, the Trustee respectfully requests that the Court approve the Stipulation, approve the Trustee's sale of the Debtor's real property to the Purchaser for the Purchase Price in accordance with the Stipulation, authorize the Trustee to make certain payments following the closing on the sale in accordance with the Stipulation and grant relief.

**JURISDICTION**

1.      The Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§157 and 1334, and Bankruptcy Code § 105(a).

2.      This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(A) and (L).

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

4.      The statutory predicates for the relief sought in this Motion include sections 105(a), 363(b)(1), 363(f), 363(m) and 363(m) of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2), 2002(a)(3), 6004(a), 6004(h) and 9019(a).

## BACKGROUND

5.      The Debtor was formed in 1989 as a Housing Development Fund Corporation ("HDFC") under Article XI of the New York State ("NYS") Private Housing Finance Law ("PHFL") for the purpose of developing affordable housing and as a cooperative corporation under the NYS Business Corporation Law ("BCL").

6.      On September 4, 2018 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court.

7.      Lori Lapin Jones was appointed as the Chapter 7 Trustee of the Debtor's estate and, by operation of law, Lori Lapin Jones is the permanent Chapter 7 Trustee of the Debtor's estate.

8.      The Debtor has represented that it has four (4) shareholders with an interest in the Debtor: (a) Mildred Williams; (b) Jermaine Anthony; (c) Elhassan Hussein; and (d) Edward Gray (collectively, "Shareholders").

9.      As of the Petition Date, the Debtor was the owner of record of real property and the building and improvements thereon known as and located at 1516 Bedford Avenue, Brooklyn, New York, Block 1252, Lot 80 ("Property"). By deed dated May 8, 1989, the City granted title to the Property to the Debtor, wherein the Debtor agreed to operate the Property solely as a housing project for persons or families of low income as defined in section 576 of Article XI of the PHFL.

10.     Prior to the Petition Date, NYC Department of Housing Preservation and Development ("HPD") commenced an action under Article 7A of the NYS Real Property Actions and Proceedings Law on December 29, 2011 in the Civil Court of the City of New York, County of Kings, Housing Part B ("Civil Court"), Index No. 3063/11 ("7A Proceeding"), and by order entered on February 2, 2012, the Civil Court appointed an administrator to, inter alia, operate the Property and remedy certain conditions ("7A Administrator").

11.     Due to delinquent real property taxes, the Property was included in In Rem Tax Foreclosure Action No. 53, Borough of Brooklyn (Sup. Ct. Kings Co. Index No. 8700/2015) ("Foreclosure Action"), and a foreclosure judgment was entered on December 14, 2017 ("Foreclosure Judgment") pursuant to the in rem tax lien foreclosure laws of § 11-401 et seq. of the Admin. Code.

12.     The City asserts that the period within which to redeem the Property under the Foreclosure Judgment and the Admin. Code expired prior to the Petition Date. The City also asserts that the Property was to be transferred pursuant to the Foreclosure Judgment as part of the City's third-party transfer program ("TPT") under 11-412.1 of the Admin. Code and the Rules and Regulations of the City of New York to a third-party transferee operating under a regulatory agreement with HPD and rehabilitated and maintained as affordable housing. The Petition Date occurred before a deed under the Foreclosure Judgment was executed.

13.     Prior to the Petition Date, the Debtor entered into a contract of sale to sell the Property to Gavriel Sakoff, as nominee for an entity to be formed, for $4.3 million, not subject to affordability restrictions under State and Local Law, including the PHFL. Jaitegh Singh was the Debtor's real estate broker in connection with the proposed sale.

4

14.     The City filed a motion for relief from the automatic stay on December 27, 2018 ("Stay Relief Motion") to permit it to execute a deed pursuant to the Foreclosure Judgment and transfer title to the Property in TPT. See ECF No. 11. The Trustee and Debtor filed objections to the Stay Relief Motion arguing, among other reasons and respectively, improper service in the Foreclosure Action, various infirmities in the Foreclosure Action and 7A Proceeding and administration, and oversite of the HDFC, and the right to sell the Property for an amount in excess of the RPT Lien and Water Lien under section 363 of the Bankruptcy Code. See ECF Nos. 19, 22.

15.     The Trustee filed a motion to sell the property ("Sale Motion") dated January 2, 2019. See ECF No. 14. The City filed an objection to the Sale Motion, arguing among other things that the Property could not be sold for market value or surplus proceeds distributed to shareholders under the PHFL, and the Debtor filed a partial objection to the Sale Motion. See ECF Nos. 18, 21.

16.     The Trustee, the City and the Debtor filed additional briefs and replies with respect to the Stay Relief Motion and Sale Motion and issues identified by the Court. See ECF Nos. 29, 30, 31.

17.     Pursuant to a Notice of Discovery of Assets, the deadline to file claims against the Debtor's estate was August 10, 2020. See ECF No. 35.

18.     The New York City Water Board ("Water Board") filed a proof of secured claim in the amount of $478,126.5 for water and sewer charges, which is claim no. 1 on the claims register ("Water Board Claim").

19.     The City's Office of Administrative Trials and Hearings ("OATH") filed a proof of claim against the Debtor's estate in the amount of $8,305.37, of which $6,505.37 is asserted as

a secured claim, and $1,800 is asserted as an unsecured claim, for, inter alia, Environmental Control Board ("ECB") and Department of Health ("DOH") violations, which is claim no. 2 on the claims register ("OATH Claim").

20.    The City's Department of Finance ("DOF") filed a proof of secured claim against the Debtor's estate in the amount of $2,993,565.91 for pre-petition real estate taxes and charges, with interest through May 31, 2020, which is claim no. 3 on the claims register ("DOF Claim").

21.    DOF filed an administrative secured proof of claim against the Debtor's estate in the amount of $65,596.22 for post-petition real estate taxes and charges, which is claim no. 4 on the claims register ("DOF Administrative Claim").

22.    The City asserts that real property taxes and charges against the Property owed to the DOF, including HPD emergency repair charges transferred to DOF for inclusion on the real property tax account, and inclusive of the amounts in the DOF Claim and DOF Administrative Claim, total $3,114,544.65 with interest through July 27, 2020 ("RPT Lien"), and water and sewer charges against the Property owed to the Water Board total $590,363.17 as of July 27, 2020 ("Water Lien").

23.    The City asserts that the RPT Lien and Water Lien are first priority liens against the Property under the NYC Administrative Code ("Admin. Code").

24.    The Trustee, the City, the Debtor, the Debtor's Shareholders and the Purchaser engaged in protracted, good faith negotiations to resolve their issues relating to the Property. In view of the costs and uncertainty associated with continued motion practice, litigation and other proceedings in this Court, the Trustee, the City, the Debtor, the Debtor's Shareholders, the Purchaser and the 7A Administrator entered into and agreed to the terms of the Stipulation, a copy of which is Exhibit "1".

## RELIEF REQUESTED AND BASIS FOR RELIEF

25.      By this Motion, pursuant to sections 105(a), 363(b)(1), 363(f), 363(m) and 363(n) of the Bankruptcy Code and Bankruptcy Rules 2002(a)(3), 6004 and 9019(a), the Trustee seeks: (a) approval of the Stipulation; (b) approval of the Trustee's sale of the Property to the Purchaser for the Purchase Price in accordance with the Stipulation; (c) authority to make certain payments from the proceeds of sale of the Property after the closing on the sale; and (d) related relief. For the reasons set forth more fully below, the Trustee believes that the agreement embodied in the Stipulation falls above the lowest point in the range of reasonableness and respectfully requests this Court approve the Stipulation. A proposed Order, which is agreed to by the Trustee, the City and the Purchaser, is annexed as Exhibit "2" ("Proposed Order").

### A.      The Terms of the Stipulation

26.      The Stipulation provides for, inter alia, the consensual sale of the Property to the Purchaser for $790,000, payments by the Purchaser to the Debtor's Shareholders totaling $410,000, the Trustee's payment of $400,000 from the sale proceeds to the City of New York in full and final satisfaction of certain liens against the Property, and the Trustee's payment of other fees and expenses relating to the Debtor's case and the Property as specifically set forth in the Stipulation and described below.

27.      The salient terms of the Stipulation are as follows:

  a. The Purchaser and the Shareholders will enter into the shareholder agreement annexed to the Stipulation as Exhibit "A" ("Shareholder Agreement") with respect to certain payments to be made to the Shareholders by the Purchaser totaling $410,000. The Trustee is not a party to the Shareholder Agreement and shall have no obligation or liability with respect to the Shareholder Agreement. See Exhibit "1" at p. 5, ¶2.

  b. The City and the Purchaser will enter into the regulatory agreement annexed to the Stipulation as Exhibit "B" ("Regulatory Agreement") with respect to the operation of the Property as affordable housing pursuant to the terms set forth therein. The Trustee and the Debtor are not parties to the Regulatory Agreement

7

and shall have no obligation or liability with respect to the Regulatory Agreement. See Exhibit "1" at p. 5, ¶3.

c.  The City and Purchaser will also enter into the housing repair agreement annexed to the Stipulation as Exhibit "C" ("HRA"), as set forth in paragraph 6.E of the Regulatory Agreement, pursuant to which the Purchaser will make repairs to the Property, estimated to cost $1,326,000, on the terms and dates set forth in the HRA. The Trustee and the Debtor are not parties to the HRA and shall have no obligation or liability with respect to the HRA. See Exhibit "1" at p. 6, ¶4.

d.  The Purchaser agrees to relocate non-shareholder tenants with valid leases during performance of the repair work to the extent required for repairs to occupied units, and will enter into temporary relocation agreements with any such tenants in the form annexed to the Stipulation as Exhibit "D" ("TRA"). The Trustee and the Debtor are not parties to the TRA and shall have no obligation or liability with respect to the TRA. See Exhibit "1" at p. 6, ¶5.

e.  Within ten days of clearance of the Purchase Price following closing on the sale of the Property to the Purchaser, the Trustee shall pay the City $400,000 ("City Payment") in full and final satisfaction of the RPT Lien and the Water Lien (including the DOF Claim, DOF Administrative Claim and Water Board Claim), and any additional taxes and charges and water charges which may accrue through the date of closing of the sale, provided such sale closes on or before November 30, 2020 ("City Lien Payment"). The City Lien Payment shall be allocated to DOF and the Water Board. The Trustee shall make the City Lien Payment pursuant to written instructions from counsel for the City promptly after the sale closes. Such payment shall be deemed to be in full and final satisfaction of the Debtor's obligation on account of the RPT Lien and the Water Lien, but such payment shall not be deemed to satisfy any other liens or claims of the City of New York, such as OATH violations, ECB violations, Department of Health violations and Department of Sanitation violations (collectively, "OATH Violations"), which as against the Debtor total approximately $8,377.11 as of July 23, 2020 (inclusive of interest on the OATH Claim), and Department of Buildings violations, such as boiler violations (collectively, "DOB Violations"), totaling approximately $4,500 in principal as of July 23, 2020. See Exhibit "1" at pp. 6-7, ¶6.

f.  Within ten days of clearance of the Purchase Price following closing on the sale of the Property to the Purchaser, the Trustee shall also pay: (i) New York City Transfer Tax, which is estimated to be approximately $21,000; (ii) the 7A Administrator's fees, which are estimated to be up to $7,500; (iii) up to $15,000 for payment of OATH Violations (including the OATH Claim) and DOB Violations, but no more than necessary to satisfy all of such violations, provided that any additional valid and allowable OATH Violations and DOB Violations, if any, will be paid from the Debtor's estate up to $5,000 and in no event shall Purchaser have any obligation to pay any amount beyond the Purchase Price to satisfy any such violations; (iv) $72,000 to the Debtor's real estate broker, Jaitegh

8

Singh, in full and final satisfaction of any commissions earned in connection with the sale of the Property; and (v) $68,000 to counsel to the Debtor and the Shareholders, Angelyn D. Johnson, Esq. See Exhibit "1" at p. 7, ¶7.

g. The balance of the Purchase Price, after payment of the sums set forth in paragraphs 6 and 7 of the Stipulation, shall be reserved for payment of: (i) the Trustee's commission and expenses (subject to separate Order of the Court), which are estimated to be approximately $43,000; (ii) the Trustee's retained professionals' fees and expenses (subject to separate Order of the Court), which are estimated to be approximately $130,000; and (iii) distributions in the order of priority under the Bankruptcy Code, which may include distributions to the Shareholders. See Exhibit "1" at p. 7, ¶8.

h. Neither the Trustee nor the Debtor's estate shall be responsible for any claims relating to the Property that arose after the Petition Date, other than as set forth in the Stipulation, and any and all such claims shall be the responsibility of the 7A Administrator. Upon closing of the sale of the Property to the Purchaser, the appointment of the 7A Administrator shall be deemed to be terminated in the same manner as though the Property had been foreclosed in accordance with provisions of 11-412.1(c) of the Admin. Code, and upon such termination shall have the duty to account as set forth in 11-412.1(c) of the Admin. Code. More specifically, upon the closing of sale of the Property to Purchaser, the 7A Administrator shall have no rights to manage, operate or otherwise deal with any aspect of the Property, except to account for his prior management and operation of the Property by filing a final account with the Civil Court and HPD, which shall be provided to all parties to the Stipulation on request. The 7A Administrator shall turn over all documents and records related to the operation of the Property, including but not limited to all lease agreements, and any outstanding repair bills, utility bills, warranties, appliance receipts, and any other document reasonably requested by Purchaser. Quarterly tax bills for the last 3 years and water and sewer account history will be provided to the Purchaser by the City to the Purchaser upon request. The 7A Administrator's monthly reports filed with HPD and the Civil Court, to the extent not otherwise available, will be provided by the City or 7A Administrator upon request. See Exhibit "1" at pp. 7-8, ¶9.

i. In consideration of the City accepting the City Payment in satisfaction of the RPT Lien and Water Lien, and subject to payment to the Shareholders of any amounts set forth in the Shareholder Agreement, the Debtor, its estate, and any party claiming an interest therein, including the Shareholders, shall be deemed to have waived any claim against the City with respect to the Property or the Debtor except for rights, claims and obligations under the Stipulation. See Exhibit "1" at p. 8, ¶10.

9

28.    The above is intended to be only a summary of the Stipulation. The Trustee respectfully refers the Court and all parties to the Stipulation that is Exhibit "1" for its complete terms and conditions.

**B**.    **The Stipulation Should Be Approved**

        **i.**    **Approval Is Warranted Under Bankruptcy Rule 9019**

29.    The Trustee submits that the agreement embodied in the Stipulation is in the best interests of the Debtor's estate and should be approved.

30.    Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate. In re Dewey & LeBoef LLP, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012).

31.    Under Rule 9019 of the Bankruptcy Rules, the court has the authority to "approve a compromise or settlement." FED. R. BANKR. P. 9019(a). A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve a settlement. In re Drexel Burnham Lambert Grp., Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). See also Topwater Exclusive Fund III, LLC v. SageCrest II, LLC (In re SageCrest II), Nos. 3:10-cv-978 (SRU), 3:10-cv-979 (SRU), 2011 WL 134893, at *8-9 (D. Conn. Jan. 14, 2011). Cousins v. Pereira (In re Cousins), No. 09 Civ. 1190(RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010). In re Chemtura Corp., 439 B.R. 561, 593–94 (Bankr. S.D.N.Y. 2010). In re Lehman Bros. Holdings, 435 B.R. 122, 134 (S.D.N.Y. 2010).

32.    A court's responsibility is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Chemtura, 439 B.R. at 594 (quoting

In re W.T. Grant, Co., 699 F.2d 599, 608 (2d Cir. 1983)) (internal quotations omitted). However,

the court is not required to go so far as to conduct a trial on the terms to approve a settlement. Id.

Rather, the court may rely upon the opinions of the trustee, the parties and their attorneys to

evaluate the settlement and to make an independent judgment. See In re Adelphia Communs.

Corp., 368 B.R. 140, 225-226 (Bankr. S.D.N.Y. 2007)

33.     The court must inform itself of "all facts necessary for an intelligent and objective

opinion of the probabilities of ultimate success should the claim be litigated." O'Connell v.

Packles (In re Hilsen), 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) (quoting TMT Trailer Ferry, 390

U.S. at 424) (internal quotations omitted).

34.     The United States Court of Appeals for the Second Circuit outlined the test for

consideration of settlements under the Bankruptcy Rules in Motorola, Inc. v. Official Comm. of

Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007). The

factors to be considered are interrelated and require the court to evaluate:

> (1) the balance between the litigation's possibility of success and the settlement's future
> benefits; (2) the likelihood of complex and protracted litigation, "with its attendant
> expense, inconvenience, and delay," including the difficulty in collecting on the
> judgment; (3) "the paramount interests of the creditors," including each affected class's
> relative benefits "and the degree to which creditors either do not object to or affirmatively
> support the proposed settlement;" (4) whether other parties in interest support the
> settlement; (5) "competency and experience of counsel" supporting, and "[t]he
> experience and knowledge of the Court judge" reviewing, the settlement; (6) "the nature
> and breadth of releases to be obtained by officers and directors;" and (7) "the extent to
> which the settlement is the product of arm's length bargaining."

Id. (internal citations omitted). The burden is on the settlement proponent to persuade the court

that the settlement is in the best interests of the estate. See 8 NORTON BANKRUPTCY LAW AND

PRACTICE 3D § 167:2 (3d ed. 2011).

35.     Here, the Trustee determined in her reasonable business judgment that the

agreement embodied in the Stipulation is fair and reasonable within the governing standards.

11

36.     The Stipulation provides for the consensual sale of the Property, creates an estate from which creditors of the Debtor can be paid, and fully resolves the Sale Motion and the Stay Relief Motion. Absent the agreement embodied in the Stipulation, continued litigation over the Sale Motion and the Stay Relief Motion was likely to be protracted and costly. The outcome of that litigation was necessarily uncertain and, while the litigation is pending, the City's liens against the Property would only to continue to grow. The sale of the Property in accordance with the Stipulation ensures that the Property is consensually sold without further litigation, provides for the payment of various liens against the Property, provides for the payment of other fees and expenses relating to the Debtor and the Property, and creates an estate from which creditors of the Debtor's estate can be paid.

37.     The agreement embodied in the Stipulation was the result of extensive and protracted arm's-length and Court-supervised negotiations. The Trustee, the Shareholders, the Purchaser and the City were each represented by experienced counsel throughout the negotiations.

38.     For these reasons, the Trustee submits that the Stipulation is fair, reasonable and in the best interests of the Debtor's estate and, accordingly, the Trustee recommends its approval.

39.     The Trustee also notes that there are significant non-bankruptcy related attributes to the Stipulation. Pursuant to ancillary agreements (to which the Trustee and the Debtor are not parties), the Purchaser agreed to: (a) the terms of the continued operation of the Property as affordable housing; (b) make certain repairs to the Property; and (c) relocate non-shareholder tenants with valid leases during performance of the repair work to the extent required for repairs to occupied units and the Property. See Exhibits "B", "C" and "D" to Stipulation.

### ii.    <u>The Sale of the Property To The Purchaser Should Be Approved</u>

40.    By this Motion and in accordance with the Stipulation, the Trustee also seeks approval of the sale of the Property to the Purchase for the Purchase Price pursuant to sections 363(b)(1), (f), (m) and (n) of the Bankruptcy Code.

41.    Section 105(a) of the Bankruptcy Code grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

42.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

43.    Section 363(f) of the Bankruptcy Code provides that property may be sold under section 363(b) of the Bankruptcy Code:

> free and clear of any interest in such property of an entity other than the estate, only if—
>
>> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>>
>> (2) such entity consents;
>>
>> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>>
>> (4) such interest is in bona fide dispute; or
>>
>> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Thus, a trustee may sell property of a bankruptcy estate outside the ordinary court of business if one of the five conditions under section 363(f) is satisfied. See In re Grubb & Ellis Co., Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr. S.D.N.Y. Mar. 27,

2012) (discussing section 363(f) of the Bankruptcy Code); In re Borders Group, Inc., 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011) (same).

44.     Section 363(m) of the Bankruptcy Code affords protection to a good faith purchaser in any interest in property purchased from an estate, whether the sale conducted is later reversed or modified on appeal. Specifically, section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m).

45.     Purchasers of estate assets pursuant to a section 363 sale "are protected from a reversal of the sale on appeal so long as they acted in good faith." Licensing by Paolo v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997) (citing 11 U.S.C. §363(m)). The requirement that a purchaser act in good faith "speaks to the integrity of his conduct in the course of the sale proceedings." In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted). The "misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders. Id. (citations omitted). See also In re GMC, 407 B.R. 463, 494 (Bankr. S.D.N.Y. 2009); Gucci, 126 F.3d at 390. The United States Court of Appeals for the Second Circuit has held that a party would have to show fraud or collusion between a buyer and the debtor-in-possession or trustee in order to demonstrate a lack of good faith. See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F. 3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between

the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."). See also In re Bakalis, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

46.    In this case, the Trustee used her sound business judgment to determine that the sale of the Property to the Purchaser pursuant to the Stipulation is in the best interests of the Debtor's estate. The conditions of the sale of the Property to the Purchaser, as set forth in the Stipulation and the various ancillary agreements annexed to the Stipulation, were heavily negotiated over a protracted time period and represent the conditions under which the City would consent to the Trustee's sale of the Property.

47.    As reflected in the Proposed Order, the Property shall be conveyed to the Purchaser: (a) "AS IS" "WHERE IS", "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever; (b) free and clear of any and all interests including, but not limited to, any and all interests including, but not limited to, monetary liens, claims and encumbrances (collectively, "Liens"), with such Liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the entry of the Order for Relief against the Debtor except as expressly provided in the Stipulation and the agreements annexed thereto; and (c) subject to, among other things: (i) any state of facts that an accurate survey may show; (ii) any covenants, restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions. See Exhibit "2" at p. 4, ¶7.

48.    The Purchase Price exceeds the known Liens against the Property and provides that the Trustee will pay the City $400,000 from the sale proceeds in full and final satisfaction of the RPT Lien and the Water Lien (including the DOF Claim, DOF Administrative Claim and

Water Board Claim). The Stipulation further provides that the Trustee will pay up to $15,000 for

payment of OATH Violations (including the OATH Claim) and DOB Violations.[1]

49.    The Purchaser is the nominee of Gavriel Sakoff. The Trustee and her counsel

have no connection to the Purchaser or Gavriel Sakoff, and no facts or circumstances have come

to the attention of the Trustee suggesting bad faith or collusion in this case.

50.    Based on the foregoing, the Trustee submits that the sale of the Property to the

Purchaser for the Purchase Price pursuant to the Stipulation is a proper exercise of the Trustee's

fiduciary responsibilities and a sound exercise of the Trustee's business judgment. Thus, the

Trustee should be authorized to sell the Property to the Purchaser in accordance with the

Stipulation and sections 363(b)(1), 363(f), 363(m) and 363(n) of the Bankruptcy Code.

**C.    The Trustee Should Be Authorized To Make The Payments Contemplated In the Stipulation**

51.    The Stipulation contemplates that, following the closing on the Property, the

Trustee will make certain payments after the Purchase Price clears the estate account. See

Exhibit "1" at pp. 6-7, ¶¶6, 7. The Trustee's ability to make the payments contemplated in the

Stipulation is integral to the agreement among the Trustee, the City and the Shareholders.

52.    Accordingly, the Trustee respectfully requests that: (a) the Order approving the

Stipulation be effective upon entry; and (b) the Trustee be authorized to pay from the sale

proceeds: (i) the City; (ii) the New York City Transfer Tax, which is estimated to be

approximately $21,000; (iii) the 7A Administrator's fees, which are estimated to be up to $7,500;

(iv) up to $15,000 for payment of OATH Violations (including the OATH Claim) and DOB

Violations, but no more than necessary to satisfy all of such violations, provided that any

---

[1]    The Debtor's estate shall only be responsible to satisfy all such obligations, provided that any additional valid and allowable OATH Violations and DOB Violations, if any, will be paid from the Debtor's estate up to $5,000.

additional valid and allowable OATH Violations and DOB Violations, if any, will be paid from

the Debtor's estate up to $5,000; (v) $72,000 to the Debtor's real estate broker, Jaitegh Singh, in

full and final satisfaction of any commissions earned in connection with the sale of the Property;

and (vi) $68,000 to counsel to the Debtor and the Shareholders, Angelyn D. Johnson, Esq.

**NOTICE AND NO PRIOR REQUEST**

53.    By separate application, the Trustee will seek entry of an Order scheduling a

hearing on shortened notice of this Motion.

54.    No previous application for the relief requested herein has been made to this or

any other Court.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order granting

the relief requested herein, and such other and further relief as may be just.

Dated: October 7, 2020
      Wantagh, New York      **LaMONICA HERBST & MANISCALCO, LLP**
                              Counsel to Lori Lapin Jones, as Chapter 7 Trustee of the
                              Estate of 1516 Bedford Avenue Housing Development
                              Fund

          By:     *s/ Gary F. Herbst*
                   Gary F. Herbst, Esq.
                   Holly R. Holecek, Esq.
                   3305 Jerusalem Avenue, Suite 201
                   Wantagh, New York 11793
                   Telephone: (516) 826-6500